OPINION
Charles A. Mack entered a plea of guilty to aggravated burglary and, after a presentence investigation, the trial judge imposed certain community control sanctions for a period of up to five years. Mack was subsequently found to have violated a condition of his community control, and community control was revoked and Mack was sentenced to five years imprisonment. He appeals, advancing two assignments of error, the first of which states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REQUIRING DEFENDANT-APPELLANT TO LEAVE THE STATE OF OHIO AND RETURN TO THE STATE OF MARYLAND FOR A FIVE YEAR PERIOD AS A CONDITION OF THE COMMUNITY CONTROL SANCTIONS, AS REFLECTED IN THE TERMINATION ENTRY.
One of the specific community control sanctions imposed by the trial judge was "(a) requirement that (Mack) return to Maryland and not return to Ohio while on probation."
Mack contends that this sanction is unlawful, and thus unenforceable, because it violates the three prong test for evaluating the reasonableness of conditions of probation enunciated in State v. Jones (1990), 49 Ohio St.3d 51:
 In determining whether a condition of probation is related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior," courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.
(The parties appear to agree that this test should also be utilized to evaluate community control sanctions in the aftermath of S.B. 2). Mack also contends that the trial judge's banishing him from Ohio for five years was unconstitutional, citing Casdorphv. Kohl (1993), 90 Ohio App.3d 294.
While there may be some merit to these contentions, in our judgment they have been waived for purposes of appellate review. At the revocation hearing, the trial judge stated that she specifically recalled that Mack's "leaving town" was part of the negotiated plea wherein Mack pleaded guilty as charged in return for the State's recommendation of community control sanctions rather than a prison sentence. Although the transcript of the plea proceeding does not reflect an agreement by Mack to leave town, the assistant prosecutor in charge of the case testified at the revocation hearing that her concern was with protecting Dawn Jefferson, with whom Mack had a tumultuous relationship and who was the victim of the aggravated burglary. The assistant prosecutor testified that she only agreed to recommend community control sanctions because of Mack's then counsel's representation that Mack intended to leave the state, which satisfied her concern for the future safety of the victim. Finally, at the sentencing proceeding, Mack, through his then counsel, specifically requested that he be permitted to return to Frederick, Maryland, where he has family and where he previously had work. The trial judge then stated that one of the requirements of Mack's community control was that he return to Maryland and not come back during the five years of his community control. Mack, in response to the trial judge's questions, twice stated he understood. No objection was made to the order forbidding Mack's return to Ohio for five years.
Although the transcript of the plea proceeding does not reflect Mack's agreement to leave Ohio, we are mindful that discussions among trial judges, prosecutors, and defense counsel concerning plea negotiations often occur off the record. We have no reason not to credit the unrefuted statement of the trial judge that her recollection was that Mack had agreed to leave Ohio as part of the negotiated plea that included the State's recommendation of community control rather than prison, which — given Mack's criminal record — was indeed a generous recommendation. Certainly, Mack was entitled to agree, in return for a recommendation of community control, to accept a requirement that might not pass constitutional muster or the three prong reasonableness test. As such, he has waived appellate review of this community control sanction. See State v. Butts (1996),112 Ohio App.3d 683, 686. Furthermore, Mack specifically requested the opportunity to return to Maryland and did not object to the trial judge's ordering him not to return to Ohio during the five years of his community control. Certainly, Mack cannot be heard to complain about the "invited error" of being ordered to return to Maryland. State v. Woodruff (1983), 10 Ohio App.3d 326; see also 5 Ohio Jurisprudence 3d, Appellate Review, Section 543. While Mack did not request the trial judge to forbid his return to Ohio for up to five years, suffice it to say that Mack's community control was not revoked because he tried to return to Ohio, but because he never left Ohio at all. See second assignment of error.
The first assignment of error is overruled.
Mack's second assignment of error is as follows:
 APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN HE DID NOT RECEIVE WRITTEN NOTICE OF ALL THE ALLEGED VIOLATIONS OF PAROLE WHICH WERE RELIED UPON IN REVOKING HIS PROBATION AND WHEN SUCH CONDITIONS WERE NOT PROHIBITED BY THE JOURNALIZED ENTRY, THE PROBATION CONTRACT, OR MENTIONED IN THE NOTICE OF REVOCATION.
On June 19, 1998, Mack was notified of violations of community control as follows:
 Sanctions — "Defendant is to return to the State of Maryland and not return to Dayton, Ohio, as long as he is on probation." You failed to return to the State of Maryland on May 22, 1998.
In this assignment, Mack argues that the trial judge did not confine herself to the specified violation in revoking his community control.
At the May 13, 1998, sentencing proceeding, after Mack personally twice acknowledged he was to absent himself from Ohio for five years, the following dialogue occurred between the trial judge and Mack's counsel in Mack's presence:
THE COURT: Okay.
 After docket, you meet with probation, get everything settled, and as soon as possible, you are to get out of town.
 MR. COX: He understands that, your Honor. We have reviewed all that.
THE COURT: Okay.
At the revocation hearing, Mack acknowledged that he understood he was to leave town as soon as possible.
The transcript of the revocation hearing covers more than ninety pages of transcribed testimony. Although the focus of the inquiry was whether Mack had violated the requirement that he leave Ohio as soon as possible, the evidence understandably was broader in scope, including Mack's failure to immediately report to the probation department and his returning to Dawn Jefferson's home. The trial judge's comprehensive discussion from the bench alluded to these facts as well, but we think that a fair reading of the trial judge's remarks is to the effect that she found that Mack's conduct after leaving court May 13 demonstrated that he didn't take seriously her order to leave town as soon as possible. We do not conclude from this record that the trial court revoked Mack's community control because he failed to report to the probation department or resumed contact with Dawn Jefferson.
Although the testimony conflicted, in certain respects, there was corroborated testimony that in the early evening of May 22, 1998, Mack's probation officer, Beverly Pittman, authorized Mack's release from the county jail to his mother, who would take him to the bus station and purchase a bus ticket for Mack on the 11:30 p.m. bus to Maryland scheduled to depart that evening. (Mack had been in jail since May 19, 1998, on a warrant from the Vandalia Municipal Court on an unrelated theft offense). There was testimony that although Mack was released to his mother as authorized, he returned to Dawn Jefferson's residence rather than going to the bus station with his mother.
Thus, there was evidence that Mack could have left Ohio for Maryland May 22, 1998, but failed to do so, thereby violating the requirement that he leave for Maryland as soon as possible.
Mack was provided with written notice of a specific violation of his community control and the evidence supported that alleged violation. The fact that the trial judge alluded to Mack's conduct after leaving court May 13 does not persuade us that she revoked his community control for any reason other than the specified violation. Mack was not deprived of due process.
The second assignment is overruled.
The judgment will be affirmed.
BROGAN, J. and YOUNG, J., concur.
Copies mailed to:
Lynn Nothstine
Peter R. Certo, Jr.
Hon. Barbara P. Gorman