JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, John Queen ("Queen"), appeals his theft conviction. Finding merit to the appeal, we modify his conviction, vacate his sentence, and remand for resentencing.
 {¶ 2} In 2006, a jury found Queen guilty of theft, a fourth degree felony. He was sentenced to six months in prison. The following evidence was presented at trial.
 {¶ 3} In 2004, Mike Newell ("Newell") contacted Noell Sivertsen ("Sivertsen") of the Community Alliance Network of Thoroughbred Ex-Racehorses of Ohio ("CANTER") to donate two of his race horses, Jakeman (a bay gelding) and For All You Girls (a bay mare).[1] CANTER is an organization which transitions ex-racehorses into other "careers." When CANTER had a stable available for a donated horse, someone from CANTER would pick up the horse and deliver it to the stable. At the time Newell contacted Sivertsen, CANTER had no space available for the horses. Sivertsen told Newell that CANTER would pick up the horses when it had room.[2] Newell also told Queen, who worked at Thistledown Racetrack ("Thistledown"), that he was donating his horses to CANTER.[3] A few weeks later, *Page 3 
when Newell donated a third horse to CANTER, he asked Sivertsen for tax receipts for Jakeman and For All You Girls. Sivertsen told Newell that CANTER never received those horses.
 {¶ 4} Blair Mullen and John Chatterton ("Chatterton"), Newell's employees, testified that they last saw Jakeman with Queen. When Queen picked up Jakeman, he told them that CANTER had room for the horse. Chatterton also testified that he directed Queen to the stall where For All You Girls was located so she could also be delivered to CANTER. Another witness testified that she saw Charles Burneson ("Burneson"), Queen's co-defendant, take For All You Girls from Thistledown's premises. Burneson testified that he took For All You Girls to a trailer for Queen. He observed another horse on the trailer, and he believed that Queen was taking them to CANTER.
 {¶ 5} Queen now appeals, raising four assignments of error. In his first assignment of error, he argues that the trial court erred by failing to instruct the jury on accomplice testimony. He contends the trial court's failure substantially affected the outcome of his trial because Burneson presented the only evidence that he removed For All You Girls from Newell's stable at Thistledown.
 {¶ 6} However, we note that defense counsel objected to the inclusion of the accomplice testimony jury instruction when it was requested by the State. It is well established that a court will not permit a party to take advantage of such "invited error." See State ex rel. The V. Cos.v. Marshall, 81 Ohio St.3d 467, 471, 1998-Ohio-329, *Page 4 692 N.E.2d 198. Under the invited error doctrine, a party may not take advantage of an alleged error that the party induced or invited the trial court to make. State v. Woodruff (1983), 10 Ohio App.3d 326, 327,462 N.E.2d 457. "[A] litigant cannot be permitted, either intentionally or unintentionally to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." Lester v. Leuck (1943),142 Ohio St. 91, 93, 50 N.E.2d 145.
 {¶ 7} In the instant case, Queen's attorney objected to the inclusion of the accomplice testimony jury instruction, which he now claims is error. We find this is clearly invited error. Therefore, the first assignment of error is overruled.
 {¶ 8} In the third assignment of error, Queen argues that there was insufficient evidence to sustain his conviction. He argues that the State failed to produce sufficient evidence that he took the horses without consent. He contends that there is no evidence that connects him to For All You Girls, other than the self-serving allegations of Burneson. He further argues that there is insufficient evidence to support the jury's finding that the value of the horses was between $5,000 and $100,000.
 {¶ 9} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be *Page 5 
believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 10} Queen was convicted of theft pursuant to R.C. 2913.02, which provides in pertinent part:
 "(A)(1) No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent.
 * * * "(B)(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars * * *, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree.* * *"
 {¶ 11} R.C. 2913.61(D) provides the following criteria to "value" stolen property:
 "(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, `fair market value' is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."
 {¶ 12} In the instant case, the testimony established that Queen did not have permission to pick up Jakeman or For All You Girls on behalf of CANTER. Two *Page 6 
witnesses testified that Queen took Jakeman from his stall under the pretense that he was working for CANTER at the time. Chatterton testified that he directed Queen to the stall of the second horse when Queen picked up Jakeman. Furthermore, another employee of Newell's testified that she saw Burneson leading For All You Girls to a trailer. Darcie Campbell ("Campbell") testified that she boarded For All You Girls and an all brown bay gelding (Jakeman) at her farm at Burneson's request. Therefore, we find sufficient evidence that Queen took the horses without consent.
 {¶ 13} However, we find that the State failed to produce sufficient evidence to establish the horses' value as between $5,000 and $100,000. Burneson sold an all brown bay gelding (Jakeman) and For All You Girls to Ron Andio ("Andio"), a horse auctioneer, for $500. When Andio picked up the horses from Campbell's farm, he left the money with Campbell. The testimony established that Burneson and Queen obtained the $500 payment from Campbell. Moreover, Newell, as the owner of Jakeman and For All You Girls, testified that he did not know how to put a value on a "retired" horse. He also stated that the horses had "no nominal value" because they were retired. Furthermore, the State failed to present evidence as to good faith offers a purchaser would make for the horses or expert testimony as to the fair market value of the horses. Thus, based on the State's evidence, we cannot say that sufficient evidence was presented to convict Queen of theft of property valued between $5,000 and $100,000. *Page 7 
 {¶ 14} Because the State failed to meet its burden of establishing the horses' value necessary for sentencing as a fourth degree felony theft offense, the third assignment of error is sustained. However, this error does not require reversal of Queen's conviction. It warrants a reduction only in the degree of the offense. Value was established at $500, making the theft a fifth degree felony. Therefore, we modify his conviction and vacate his sentence and remand for resentencing as a fifth degree felony.[4] See State v. Holloman (Sept. 14, 2001), Hamilton App. No. C-000866.
 {¶ 15} In the second assignment of error, Queen argues that the trial court erred by failing to instruct the jury as to the definition of "value" as provided in R.C. 2913.61. In the fourth assignment of error, he argues that his conviction is against the manifest weight of the evidence. Because we find insufficient evidence as to the value of the horses being between $5,000 and $100,000, the second and fourth assignments of error are rendered moot.
 {¶ 16} Accordingly, Queen's conviction is modified, his sentence is vacated, and the matter is remanded for resentencing as a fifth degree felony theft offense.
It is ordered that appellee recover of appellant the costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 8 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for proceedings consistent with this opinion.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J. and CHRISTINE T. McMONAGLE, J. CONCUR
[1] Newell owns and trains thoroughbred racehorses at Thistledown Racetrack in North Randall.
[2] On occasion, the person donating the horse had to wait for CANTER to pick up the horse because of stable availability.
[3] On past occasions, Sivertsen requested that her boyfriend, Queen, pick up donated horses on CANTER's behalf.
[4] Property valued at $500 or more and less than $5,000 is a fifth degree felony. See R.C. 2913.02. *Page 1